## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE MARIE LONGER** | : | **Civil No. 1:20-cv-02030** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff, Diane Marie Longer applied for a period of disability and disability insurance benefits, as well as for supplemental security income under Title XVI of the Social Security Act on May 8, 2018, alleging disability due to a host of mental and physical impairments. However, after consideration of the medical records and opinion evidence, including the objective diagnostic tests and clinical findings on Longer's physical and mental examinations, Longer's longitudinal treatment history, and her documented activities of daily living, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Longer could perform a limited range of sedentary work and denied her disability application.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's

findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On May 8, 2018, Longer applied for applied for a period of disability and disability insurance benefits as well as supplemental security income, citing an array of physical and emotional impairments, including asthma, back pain, chronic obstructive pulmonary disease (COPD), carpal tunnel, hypovitaminosis D, Lyme disease, headaches, depression, brain fog, fibromyalgia, heart murmur, muscle weakness, mitral valve disease, Tietze's disease, blood clots, fibrocystic disease of breast, leukopenia, deep venous thrombosis of upper extremity, bipolar disorder, disturbance in sleep behavior, anxiety, dizziness, numbness in arms and legs, fingers and toes, burning pain in her entire body, memory loss, lack of focus, fatigue, inflammation in spine and other parts of the body, hair loss, pressure in head, twitching of muscles, stiff and painful neck, and buzzing in ears. (Tr. 33, 230-31). Longer was 37 years old at the time of the alleged onset of her disability and had prior employment as a cashier, dishwasher, laundress, and home health care worker. (Tr. 243).

With respect to these alleged impairments the clinical record, medical opinions, and the plaintiff's activities of daily living revealed the following: A

March 1, 2016, x-ray of Longer's right hand showed point tenderness. (Tr. 325). Dr. Mast's 2017 patient history records indicated Longer exhibited signs of fatigue, joint swelling, and pain. (Tr. 378-80). Longer also presented positive for Lyme Disease. (Tr. 386). Her March 2017 and May 2017 rheumatology records indicated symptoms of back and neck pain, headache, and cognitive issues. (Tr. 398, 410). At that time, Longer had left her laundry service job because she could not lift more than 10 pounds and had a possible infection of her PICC line. (Id.) Longer also noted she experienced fatigue and weakness following her physical therapy ("PT") sessions. (Id.) Dr. Snyder's January 2019 records indicated Longer had trouble ambulating with or without a cane and bathing herself. (Tr. 868).

Longer's PT records from March to June 2018 noted her functioning fluctuated depending on the day. (Tr. 437-91). She had mild to severe limitations in areas of functioning, such as sitting to standing, walking, managing stairs, and activities of daily living. (Tr. 437). She required stability while walking, and occasionally needed to grasp objects for support. (Id.) Longer also indicated feeling fatigue and weakness after PT sessions. (Tr. 438). Overall, she tolerated progression of physical activity, but experienced a large decrease in muscle control afterwards. (Tr. 449).

Geisinger Medical Labs records from November 2016 to July 2018 showed swelling and deep vein thrombosis related to Longer's Lyme Disease and PICC line as well as numbness and weakness in her lower legs. (Tr. 496-638, 508-510, 513). Longer also noted fatigue and mental fog in response to PT, though with some improved mobility. (Tr. 526).

Treatment records from Dr. Pagan noted Longer's complaints of lower leg and hip pain, which Dr. Pagan opined could be related to her Lyme Disease and possibly bursitis. (Tr. 657-58). Longer was subsequently referred to a rheumatologist and prescribed Prednisone. (Tr. 661). However, she continued to experience swelling. (Tr. 662).

Longer saw Andrew Cole, Psy. D., for a mental status examination on August 31, 2018. (Tr. 760-65). Mr. Cole noted Longer had great difficulty ambulating and that she was assisted in and out of the office by her daughter. (Tr. 762). He further noted she required help in her daily living and was assisted by her boyfriend and children. (Tr. 762-73). He noted her ability to remember, understand, carry out instructions, and interact with the public as "moderate." (Tr. 764-65).

On September 18, 2018, Longer underwent an internal medicine examination by Dr. David Lindsay, M.D. (769-80). Dr. Lindsay noted an abnormal gait. (Tr. 772). He also noted that Longer was unable to walk heel to toe or squat, needed help

5

getting on and off of the exam table, and could not sit down and rise from a chair "spontaneously." (Id.) Dr. Lindsay found trigger points along her lower neck, occipital area, and SI joints and limited her to lifting and carrying no more than ten pounds, sitting for eight hours, standing for four hours in an eight-hour workday, and walking for less than ten minutes in an eight-hour workday. (Tr. 773, 775-76).

On April 11, 2019, Dr. Clarence Mast, M.D., completed a physical functional capacity questionnaire for Longer. He noted she was limited to lifting and carrying no more than ten pounds, standing or walking one hour or less, and would experience unscheduled breaks during an eight-hour workday. (Tr. 885). She would also be expected to be absent more than two days per month. (Id.)

Longer testified about her activities of daily living. She stated that she occasionally needed help getting out of bed. (Tr. 92-93). After getting out of bed, she would typically do laundry, which her kids brought to her from upstairs. (Tr. 93). She attended local activities for her children but would not travel long distances for their after-school activities. (Tr. 94). For outdoor activities, Longer testified that she weeds her garden and would sit down or crawl to do so. (Tr. 95). After ten to fifteen minutes of gardening, she needed help off the ground and needed to sit and rest. (Tr. 96). For family dinner, Longer supervised her children regarding what to cook and how to cook family dinner. (Tr. 96-97).  She could not balance herself for

6

a sustained period while cooking. (Tr. 97). She sometimes handwashed dishes, but her children largely washed and put the dishes away. (Id.) Longer went upstairs in her house about twice a day, taking her time doing so and would often have her kids assist her. (Tr. 99). She used a handicap tag for her car and only drove 15 to 20 minutes from her home. (Id.) She used a quad cane for ambulating and had a shower chair to assist with her balance while bathing. (Tr. 100).

It is against the backdrop of this evidence that the ALJ conducted a hearing in Longer's case on July 10, 2019. Longer and a vocational expert ("VE") both testified at this hearing. (Tr. 86-107). Longer testified as to her alleged conditions and how they affect her ability to perform daily activities. (Id.) The VE, in response to hypothetical questions asked by the ALJ, testified to the existence of certain jobs in which the hypothetical claimant could perform. (Id.)

Following this hearing on July 10, 2019, the ALJ issued a decision denying Longer's application for benefits. (Tr. 33-48). In that decision, the ALJ first concluded that Longer had not engaged in substantial gainful activity since November 1, 2017, the alleged onset date. (Tr. 35). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Longer had the following severe impairments: Lyme disease, fibromyalgia, anxiety, and depression.

(Tr. 36). At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Id.)

Between Steps 3 and 4 the ALJ concluded that Longer retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant would be limited to frequent use of the bilateral upper extremities. She should avoid climbing and crawling. She could have no more than occasional postural changes, such as bending, stooping, etc. The claimant should have no exposure to cold, heat, humidity, noise, or vibrations. She should have no exposure to fumes, odors, dusts, heights, or hazards. The claimant would be limited to jobs with no detailed instructions, but would be confined to routine, repetitive tasks with no assembly line productions. She could have no more than occasional contact with the public and coworkers.

(Tr. 38).

In reaching this RFC determination, the ALJ found the opinion of Dr. Parmelee, the State Agency physical examiner, overall persuasive. (Tr. 43). Dr. Parmelee opined that Longer retained the capacity to perform a light range of exertional work and would have limited pushing, pulling, reaching, handling, and fingering with her right upper extremity. (Tr. 121-25, 144-48). She further stated Longer should never climb ladders, ropes, or scaffolds, or crawl, but could perform all other postural maneuvers occasionally. (Tr. 122, 145).

The ALJ found Dr. Parmelee's opinion persuasive because it was consistent with and supported by the overall objective medical evidence of record, including diagnostic test results and measurable findings on clinical examinations. (Tr. 43). The ALJ noted it was also consistent with and supported by the findings from objective physical examinations, including the findings that Longer had occasional tenderness over her PICC line site and some positive fibromyalgia tender points, but otherwise generally retained full strength and sensation over her upper and lower extremities, had no gross focal neurological deficits, and walked with a normal gait at most appointments. (Id.) After considering all the evidence, including Longer's testimony and subjective complaints, and in giving her the benefit of the doubt, the ALJ found that Longer would be limited to performing sedentary work within these parameters. (Id.)

The ALJ also found the opinion of Dr. Amanullah, the State Agency psychological examiner, to be persuasive. Dr. Amanullah found that Longer had no limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. (Tr. 119, 142). He further found that Longer would have a moderate limitation in her ability to carry out detailed instructions, maintain attention and concentration for

extended periods, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 126-27, 149-50).

The ALJ found Dr. Amanullah's opinion to be persuasive because it was supported by and consistent with the medical evidence of record. (Tr. 44). This included the lack of dedicated mental health treatment and the lack of any serious abnormal psychiatric observations or cognitive deficits on examinations. (Id.)  The ALJ also explained that the opinion was also consistent with and supported by the generally benign findings from Longer's consultative examination. (Id.) Taking Dr. Amanullah's opinion into account, the ALJ included additional appropriate mental functional limitations in Longer's RFC assessment. (Id.)

The ALJ afforded little weight to the opinion of Dr. Lindsay. (Tr. 44). Dr. Lindsay opined Longer could lift and carry up to ten pounds, stand for four hours, and walk for up to ten total minutes in an eight-hour workday. (Tr. 775-76). He indicated Longer would need a cane to assist with ambulation and noted that Longer should never push and pull with her left hand and could occasionally push and pull with her right hand. (Tr. 776-77). He also indicated she should never use her feet for the operation of foot controls and should never perform any postural maneuvers. (Tr. 777-78). Longer, according to Dr. Lindsay, should have no exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle, but could have

occasional exposure to vibrations and continuous exposure to all other environmental conditions. (Tr. 779).

The ALJ did not find Dr. Lindsay's opinion persuasive because it was not consistent with or supported by the objective evidence of record including diagnostic test results for measurable findings on clinical examinations. (Tr. 44). The ALJ also noted that the opinion was inconsistent and not supported by the findings that Longer had occasional tenderness over her PICC line site and some positive fibromyalgia tender points, but otherwise generally retained full strength and sensation over her upper and lower extremities, had no gross focal neurological deficits, and walked with a normal gait at most appointments. (Id.) The opinion, according to the ALJ, was also inconsistent with Dr. Lindsay's own objective observations of Longer, including that Longer retained full strength over her bilateral upper and lower extremities, had no sensory deficit, and retained normal range of motion throughout. (Id.) Although Longer did demonstrate some ambulation difficulties when consulting with Dr. Lindsay, she did not use an assistive device. (Id.) Instead, she relied on her boyfriend for help. (Id.) Other treatment notes, however, indicated that Longer walked with a normal gait and station. (Id.)  Based on the opinion's lack of persuasiveness, the ALJ reasoned that Longer would be subject to less significant limitations than determined by this source. (Id.)

11

The ALJ found Dr. Cole's opinion persuasive. (Tr. 45). Dr. Cole opined that Longer would have no limitation with her ability to understand, remember, and carry out simple instructions, or make judgments on simple work-related decisions. (Tr. 764). According to Dr. Cole, Longer had a moderate limitation with her ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions, a mild limitation with her ability to interact appropriately with coworkers and supervisors, and a moderate limitation with her ability to interact appropriately with the public and to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 764-65).

The ALJ found Dr. Cole's opinion persuasive because it was consistent with and supported by the medical evidence of record, including the lack of dedicated mental health treatment, and the lack of any serious abnormal psychiatric observations or cognitive deficits on examinations, as noted above. (Tr. 45). This opinion is also consistent with and supported by Dr. Cole's own generally benign observations of Longer. (Id.) However, in consideration of all the evidence, including Longer's testimony at the hearing, and in affording Longer all benefit of the doubt, the ALJ extended additional appropriate mental functional limitations in the above residual functional capacity. (Id.)

The ALJ found Dr. Mast's opinion unpersuasive. (Tr. 45). Dr. Mast opined that Longer would be limited to lifting up to ten pounds. He noted that she would be limited to standing and walking for one hour or less and sitting for one hour or less total in an eight-hour workday. (Tr. 885). He also noted that Longer would be limited to driving for one hour or less. (Id.) Dr. Mast noted that Longer should avoid repetitive hand movements, including grasping, fine manipulation, pushing and pulling, and rotation with both hands. (Id.) He also noted that she should avoid all postural maneuvers. (Id.) He noted that Longer would require unscheduled breaks and would likely be absent more than two days per month. (Id.)

The ALJ found Dr. Mast's opinion unpersuasive because it was not supported by or consistent with the objective evidence in the record, including the findings that Longer had some fibromyalgia tender points, but otherwise retained full strength, normal sensation, had no focal neurological deficits, and walked with a normal gait at most appointments, as described more detail above. (Tr. 45). The ALJ noted that there is nothing in the record to support such significant limitations, but rather found that Longer would be limited to performing less than the full range of sedentary work within the above parameters. (Id.)

The ALJ also found unpersuasive the opinion of Dr. Mucciolo, Longer's rheumatologist. (Tr. 45). Dr. Mucciolo submitted a May 2019 physical capacity

evaluation but did not opine as to any specific functional limitations, and only indicated "see notes" on the form. (Tr. 1415). The May 2019 treatment notes do not contain any functional limitations or restrictions. (Tr. 1408-13). Dr. Mucciolo noted that Longer would require unscheduled breaks during an eight-hour day, per patient. (Tr. 1415).

Overall, the ALJ did not find this opinion persuasive, as it was not supported by or consistent with the overall evidence of record, including Dr. Mucciolo's own observations of Longer from this time, which indicate that she had some positive fibromyalgia tender points, but had no muscle weakness, grossly non-focal neurological examinations, and walked with a normal gait. (Tr. 45). The ALJ noted that Dr. Mucciolo did not actually complete this form or opine as to any specific functional limitations. (Id.) Her opinion that Longer would require unscheduled breaks was based on Longer's subjective reports rather than her own objective observations of Longer. (Id.)

The ALJ then found that Longer could not perform her past work but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 47). Having reached these conclusions, the ALJ determined that Longer had not met the demanding showing necessary to sustain this claim for benefits and denied this claim.

14

This appeal followed. (Doc. 1). On appeal, Longer challenges the adequacy of the ALJ's decision arguing the ALJ erred: (1) by failing to analyze whether her fibromyalgia, Lyme disease, or combination thereof, meets or medically equals the severity of a listed impairment, namely, SSR 12-2p and listing 14.09, inflammatory arthritis, (2) in the evaluation of the medical opinion evidence of record without consideration of the factors set forth in 20 C.F.R. § 404.1520c; and (3) by concluding she can perform jobs existing in significant numbers in the national economy. (Doc. 18, at 5-6).

As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be AFFIRMED.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not

substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d
607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.
2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather
our task is to simply determine whether substantial evidence supported the ALJ's
findings. However, we must also ascertain whether the ALJ's decision meets the
burden of articulation demanded by the courts to enable informed judicial review.
Simply put, "this Court requires the ALJ to set forth the reasons for his decision."
Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the
Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the
ALJ's decision under a deferential standard of review, but we must also give that
decision careful scrutiny to ensure that the rationale for the ALJ's actions is
sufficiently articulated to permit meaningful judicial review.

18

**B.**     **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and

recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4,

2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony

regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

**C.      Substantial Evidence Supports the ALJ's Step 3 Determination.**

First, Longer argues the ALJ erred at Step 3 by failing to analyze whether her fibromyalgia, Lyme disease, or a combination thereof meets or medically equals the severity of a listed impairment, namely listing 14.09 for inflammatory arthritis, as well as SSR 12-2p. (Doc. 18, at 6). More specifically, Longer asserts that the ALJ merely acknowledged the existence of SSR 12-2p, which defines fibromyalgia, and stated that it was "taken into account" without further analysis. (<u>Id.</u>) Instead, she argues, the ALJ focused the entirety of her Step 3 analysis on Longer's anxiety and depression rather than her fibromyalgia-related conditions. (<u>Id.</u>) Thus, Longer contends that the ALJ did not consider any applicable listings, such as 14.09, inflammatory arthritis, to determine whether her fibromyalgia meets or medically equals a listing. Had she done so, the evidence would have supported the conclusion that Longer satisfies subsection (D) of listing 14.09.

In response, the Commissioner argues the ALJ fully complied with the requirements in SSR 12-p. (Doc. 22, at 14). The Commissioner contends the ruling merely provides criteria to determine whether a claimant's fibromyalgia is a medically determinable impairment. (<u>Id.</u>) As the Commissioner notes, the ALJ

24

found that Longer's fibromyalgia did constitute a severe impairment and proceeded to consider her fibromyalgia at each remaining step of the sequential evaluation process. (Id.). Additionally, the Commissioner asserts that the ALJ was not required to expressly refer to a particular listing when evaluating Longer's impairments, citing Lopez v. Comm'r, 270 F. App'x 119, 121 (3d Cir. 2008). (Id.) The Commissioner therefore claims that the ALJ did not err in failing to reference listing 14.09 because her analysis constituted a meaningful review of the record. (Id.)

Here, the Court finds that substantial evidence supports the ALJ's Step 3 determination. At Step 3 of the sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this Step 3 disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered

disabled *per se* and is awarded benefits. 20 C.F.R. §416.920(d); <u>Burnett</u>, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. <u>Id.</u>

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under Step 3, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An ALJ is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. <u>Maddox v. Heckler</u>, 619 F.Supp. 930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014). However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." <u>Burnett</u>, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." Burnett, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . .  is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," id., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review," a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. Burnett, 220 F.3d at 119.

Here, we find that substantial evidence supports the ALJ's findings at Step 3. An ALJ is not required to expressly refer to particular listings when assessing a claimant's impairments, and failing to do so is not fatal to her decision where "the ALJ's review of the record permits meaningful review of the step-three conclusions." Lopez, 270 F. App'x at 121; see also Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 262-63 (3d Cir. 2006) (finding that an ALJ is not required to identify which listings he used in his decision if he sufficiently develops the record to permit meaningful judicial review).

Here, the ALJ was not required to reference a particular listing when evaluating Longer's impairments at Step 3. Accordingly, her argument that the ALJ erred by failing to do so is without merit. The ALJ stated that she considered Longer's impairments and noted that they did not, singly or in combination, meet or medically equal the regulatory requirements of any listing. (Tr. 36-38).

The ALJ did not explicitly refer to the criteria of Listing 14.09, but, under Lopez, her decision illustrates that she considered the appropriate factors in reaching her conclusion. The ALJ provided a comprehensive review of the medical and record evidence relevant to Listing 14.09 at Step 4. (Tr. 38-46). For example, the ALJ considered a February 2018 venous duplex of the right upper extremity which revealed no evidence of deep venous thrombosis in the right upper extremity (Tr. 40). She also discussed a venous duplex of the right upper extremity that showed acute deep venous thrombosis in the right upper extremity. (Id.) The ALJ considered a March 2018 exam showing mild edema in Longer's right upper extremity, but a normal examination of her other extremities with no motor or sensory deficits, and a normal examination the following month. (Id.) The ALJ discussed the consultative exam in September 2018 where Longer walked with an abnormal gait, needed help getting on and off the examination table, and had some abnormal findings, but also exhibited negative straight leg raise testing, had stable joints, no edema or atrophy,

had normal range of motion, intact finger and hand dexterity, and full strength in all extremities. (Tr. 42). Furthermore, the ALJ cited to numerous reports that generally showed no evidence of neurological or motor deficits (Tr. 39-42). The ALJ then stated the examinations showed "some positive fibromyalgia tender points, but otherwise [Longer] generally retained full strength and sensation over her upper and lower extremities, had no gross focal neurological deficits, and walked with a normal gait at most appointments" (Tr. 43).

The ALJ provided a detailed discussion of Longer's medical history as it relates to the criteria found in Listing 14.09. The ALJ was not required to cite to a particular listing when making her Step 3 determination. Furthermore, contrary to Longer's assertion, the ALJ specifically considered SSR 12-2p in concluding that Longer's fibromyalgia was a severe impairment. As such, this Court finds that substantial evidence supports the ALJ's Step 3 determination.

### D.    <u>Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence of Record.</u>

Next, Longer argues that the ALJ erred in evaluating the medical opinion evidence of record without considering the factors outlined in 20 C.F.R. § 404.1520c. (Doc. 18, at 7). More specifically, Longer asserts that, when evaluating Dr. Mast's opinion and whether it was persuasive, the ALJ failed to discuss all factors outlined in the new regulatory scheme that governs the ALJ's evaluation of

medical opinions. (Id.). She contends that the ALJ failed to consider factors such as length of the treatment relationship, frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, examining relationship, and specialization. (Id.). Therefore, according to Longer, the ALJ's evaluation is not supported by substantial evidence.

The Commissioner argues the ALJ reasonably evaluated Dr. Mast's opinion in full compliance with the regulatory framework. (Doc. 22, at 15). The ALJ discussed the consistency and supportability of Dr. Mast's opinion when evaluating its persuasiveness. (Id.) Furthermore, the Commissioner contends that the ALJ is only required to discuss the factors of supportability and consistency when evaluating medical opinions under 20 C.F.R. § 404.1520c. (Id., at 16). The additional factors are optional but not required. (Id.)

The Court finds substantial evidence supports the ALJ's evaluation of the medical opinions of record. Longer filed this disability application in May of 2018 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions

changed in a number of fundamental ways. The range of opinions that ALJs were

enjoined to consider were broadened substantially, and the approach to evaluating

opinions was changed from a hierarchical form of review to a more holistic analysis.

As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." Revisions to Rules
> Regarding the Evaluation of Medical Evidence ("Revisions to Rules"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg.
> 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20
> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to
> "supportability," the new regulations provide that "[t]he more relevant
> the objective medical evidence and supporting explanations presented

by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting <u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. <u>See</u> <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); <u>Turner v. Colvin</u>, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); <u>Connors v. Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings</u>, 129 F.Supp.3d at 214–15.

Here, the ALJ complied with the new regulatory scheme, and substantial evidence supports her evaluation of the medical evidence. First, Longer's argument that the ALJ was required to discuss factors other than supportability and inconsistency when evaluating a medical opinion is without merit. 20 C.F.R. § 404.1520c states explicitly:

33

> The factors of supportability…and consistency… are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be… We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c.

The ALJ was only required to discuss the factors of supportability and consistency when evaluating Dr. Mast's opinion. The ALJ did so in this case. She specifically addressed the opinion's supportability, stating that "there is nothing in the record to support such significant limitations." (Tr. 45). The ALJ did the same for the opinion's consistency. She found that Dr. Mast's opinion was inconsistent with the other evidence of record and pointed to specific examination findings. (Id.) The ALJ explained that most of Longer's examinations revealed that she had some fibromyalgia tender points but otherwise retained full strength, normal sensation, no focal neurological deficits, and walked with a normal gait. (Id.) Still, the ALJ largely credited Longer's subjective complaints and limited her to a range of sedentary work, which was more generous than the opinion of the state agency medical consultant who opined that she could perform a range of light work and noted that the intensity and persistence of symptoms reported by Longer were "partly disproportionate with the objective medical and other evidence." (Tr. 121-23, 125).

34

Accordingly, in our view the ALJ reasonably evaluated Dr. Mast's opinion in full compliance with the regulatory framework. Ultimately, the ALJ found other opinions in the record more persuasive. As we have explained, "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. In this case the ALJ examined and evaluated the various medical opinions and explained why she found some more persuasive than others in fashioning the plaintiff's RFC. Accordingly, this Court finds that substantial evidence supports the ALJ 's medical opinion evaluation.

### E.   Substantial Evidence Supports the ALJ's Conclusion that Longer Can Perform Jobs that Exist in Significant Numbers in the National Economy.

Lastly, Longer claims the ALJ erred by concluding she can perform jobs that exist in significant numbers in the national economy. (Doc. 18, at 8). Longer asserts the VE's testimony comports with Dr. Mast's RFC assessment, which recommended that Longer was limited to lifting no more than ten pounds, standing or walking an hour or less in an eight-hour day, sitting for an hour or less in an eight-hour day, and avoiding repetitive hand and postural motions. (Id., at 9). However, the ALJ found Dr. Mast's RFC assessment unpersuasive, and thus did not give it deference in her RFC assessment and her subsequent hypotheticals to the VE. (Tr. 45). Further, based

upon the VE testimony regarding the limitations noted in the RFC assessment by Dr. Mast, Longer would be unable to engage in any work. (Tr. 105-06). Therefore, based upon the testimony of the VE finding that no jobs would be available based upon the limitations outlined in the RFC assessment by Dr. Mast, Longer contends a finding of disability is appropriate.

The Commissioner responds by arguing that the ALJ's hypothetical question to the VE was proper and included all of Longer's credibly established impairments. (Doc. 22, at 18). The Commissioner also claims that an ALJ need only include impairments supported by the record in her hypothetical question. (Id.) The ALJ found Dr. Mast's opinion unpersuasive and was under no obligation to credit the VE's testimony about limitations that were not deemed credible enough to include in the RFC. (Id.)

This Court finds that substantial evidence supports the ALJ's conclusion that Longer can perform jobs that exist in significant numbers in the national economy. The ALJ submitted a proper hypothetical question to the VE that included all of Plaintiff's credibly established functional limitations (Tr. 105-06). See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004) (stating that the ALJ need only include in the hypothetical question impairments that are supported by the record);

Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Rutherford v. Barnhart, 399 F.3d 546, 554, 554 n.8 (3d Cir. 2005).

Here, Longer's argument that the ALJ erred in not including the limitations assessed in Dr. Mast's opinion is without merit. The ALJ fully discussed why she found that this opinion was not persuasive. Accordingly, the ALJ was under no obligation to credit the VE's testimony about limitations that were deemed not credible enough to include in the RFC. Accordingly, this Court finds that substantial evidence supports the ALJ's conclusion.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence, a term of art which means less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565.. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the plaintiff's skillful argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting de novo might have reached a different conclusion.' "

Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting

Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly,

under the deferential standard of review that applies to appeals of Social Security

disability determinations, we find that substantial evidence supported the ALJ's

evaluation of this case.

**IV.**   **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final

decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.


/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 14, 2022